UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MARILYN DiZENZO,** | : |
|  | : CIVIL ACTION |
|  | : NO. |
| Plaintiff, | : |
|  | : |
| v. | : **COMPLAINT** |
|  | : |
| **DWYER CONNELL & LISBONA,** | : |
|  | : JURY TRIAL DEMANDED |
| Defendant. | : |

Plaintiff, Marilyn DiZenzo, residing at 82 Rosina Street, Woodland Park, NJ 07424, by way of Complaint, states:

## NATURE OF THE ACTION

1. This is an action to remedy unlawful discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.; The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.; and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5-1 et seq.

2. Plaintiff is seeking damages to redress the injuries that she has suffered as a result of being discriminated against by Defendant, her employer, on the basis of her age and disability.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because it contains questions of federal law under the ADA and ADEA.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as her federal law claims.

1

5. This Court has personal jurisdiction over Defendant because Defendant's principal place of business or residence is within this District, Defendant regularly provides services to persons within this District, Defendant regularly conducts business within this District, and Defendant otherwise has made or established contacts within this District sufficient to permit the exercise of personal jurisdiction.

6. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District and a substantial part of the events giving rise to Plaintiff's claims took place in this district.

## PARTIES

7. Plaintiff, Marilyn DiZenzo, is a seventy-year-old woman who resides at the above address; and was, at all relevant times, an employee of Defendant and entitled to protections under the ADA, ADEA and NJLAD.

8. Defendant, Dwyer Connell and Lisbona, LLP ("DCL") is a domestic limited liability partnership organized and existing under the laws of the State of New Jersey and maintains a principal place of business at 100 Passaic Avenue, Fairfield, NJ 07004; and was, at all relevant times, Plaintiff's employer and subject to the ADA, ADEA and NJLAD.

## FACTS

9. Around September 27, 1999, Defendant hired Plaintiff to serve as a secretary to multiple attorneys at its law firm.

10. On December 31, 2017, Plaintiff broke her wrist. After meeting with her physicians, it was determined that Plaintiff would require a leave of absence to properly heal.

11. On or around January 2, 2018, Defendant approved Plaintiff's request for a leave of absence to ensure proper healing of her broken wrist, including a pending surgery to reset the bones.

12. In preparation for her surgery, and as a result of a preexisting condition, Plaintiff's physicians scheduled a Magnetic Resonance Imagining ("MRI") to ensure she was fit to undergo surgery and to determine the nature of a lump previously found in her elbow.

13. On the day of Plaintiff's previously scheduled wrist surgery, Plaintiff's physicians notified her that the MRI images showed that the mass they had detected in her elbow was, in fact, malignant.

14. Plaintiff was diagnosed with Merkel Cell Carcinoma, a rare and extremely aggressive form of skin cancer.

15. Upon further review of the diagnostic images, Plaintiff's physicians determined that there was also lymph node involvement.

16. Due to Plaintiff's cancer diagnosis, her physicians determined that she was not fit for surgery of the wrist at that time.

17. Plaintiff's hand was placed in a cast through April 2018 to promote healing. This made it difficult for Plaintiff to complete dexterous tasks such as typing and writing.

18. In February 2018, Plaintiff began regular cancer and immunotherapy treatment under the care of her oncologist.

19. Plaintiff's treatment included bi-weekly administration of Avelumab, an immunotherapy drug, which caused certain side effects, including nausea, fatigue, frequent urinary tract infections, depression and insominia.

20. During the course of her leave, Plaintiff remained in communication with her office manager, Marcela Pellett, and they discussed Plaintiff's imminent return to work. Ms. Pellett informed Plaintiff that she would need to bring proof of medical clearance to return to work.

21. Prior to her return to work, Plaintiff informed Ms. Pellett that she would need critical cancer treatments on a bi-weekly basis through December 2018, which at times might conflict with her current work schedule.

22. Plaintiff requested a reasonable accommodation—an adjustment to her work schedule—to attend her critical cancer treatment appointments while remaining employed by Defendant.

23. Ms. Pellett informed Plaintiff that her request would not be a problem, and that Plaintiff could use her sick time, personal days, and four weeks of vacation time to attend her appointments as needed.

24. Ms. Pellett told Plaintiff to obtain a letter from her doctor reflecting her need for a schedule change to accommodate her medical appointments.

25. On or around May 14, 2018, after being cleared by her physicians, Plaintiff returned to work. Plaintiff brought with her proof of medical clearance from her physician and documentation reflecting her need for a schedule change to accommodate her ongoing appointments. Plaintiff provided all of the documentation that Ms. Pellett had requested in their previous conversations.

26. However, when Plaintiff returned to work, Ms. Pellett seemed apprehensive about accommodating Plaintiff's request, and warily advised Plaintiff that she had misunderstood Defendant's vacation policy. Ms. Pellett stated that she had been advised

that, according to Defendant's employee handbook, since Plaintiff was on leave from January through May, Plaintiff did not accrue vacation time and therefore did not have vacation time to use for her appointments. Ms. Pellett further stated that Plaintiff could use her five sick days and two personal days, and when that time was exhausted, they could discuss how Plaintiff could take the additional time needed for her appointments. Ms. Pellett additionally instructed Plaintiff to obtain a letter from her doctor reflecting this need, which Plaintiff did.

27. On or around May 18, 2018, Defendant wrongfully terminated Plaintiff.

28. Defendant wrongfully terminated Plaintiff because of her age and/or disability, and because of Plaintiff's request for a reasonable accommodation.

29. At all relevant times, Plaintiff's productivity was high, she consistently performed well on the job, she enjoyed a good reputation in her occupation and was well respected by her coworkers, she had satisfactory work evaluations during her employment with Defendant, and at no time during her employment did she receive any written or oral complaints regarding her performance.

30. Prior to being terminated, Plaintiff had no plans of retiring and would have kept working for Defendant into the indefinite future. Despite diligent efforts, Plaintiff has been unable to find reasonably similar employment.

31. After terminating Plaintiff, Defendant retained a younger, less qualified individual who was not a member of Plaintiff's protected classes.

32. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

33. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

34. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against Defendant.

35. Plaintiff claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

36. The above are just some examples, of some of the discrimination to which Defendant subjected Plaintiff.

37. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

<u>COUNT I</u><br><u>DISABILITY DISCRIMINATION</u><br><u>AMERICANS WITH DISABILITIES ACT ("ADA"), 42 U.S.C. §§ 12101 et seq.</u>

38. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

39. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

40. Under the McDonnell Douglas burden-shifting analysis, Plaintiff must establish a *prima facie* case for discrimination, namely that she (1) has a disability, (2) is a qualified individual, and (3) has suffered and adverse employment action (4) under circumstances giving rise to an inference of discrimination. Turner v. Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006).

41. Furthermore, it is well-settled law that, under the ADA, employers have an obligation to provide a reasonable accommodation for a disabled employee and that the failure to provide a reasonable accommodation to an employee's known disability is a form of discrimination. 42 U.S.C. § 12112(b)(5)(A).

42. It is undisputed that (1) Plaintiff's cancer diagnosis qualifies as a disability; (2) Plaintiff's nearly two decades of performance establish she was qualified; and (3) Plaintiff was terminated (4) a mere two weeks after requesting a reasonable accommodation related to her cancer diagnosis, and no more than four days following her return from a four-month disability leave for an unrelated wrist injury.

43. Defendant cannot show a legitimate nondiscriminatory reason for its actions and any reasons proffered by Defendant for terminating Plaintiff's employment are pretextual and can readily be disbelieved.

44. Defendants engaged in an unlawful discriminatory practice by discriminating and retaliating against Plaintiff because of her disability and refusing the provide Plaintiff with a reasonable accommodation.

45. As a result of Defendants' violation of the ADA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunity; harm to her business

reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

**COUNT II
AGE DISCRIMINATION
AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA"), 29 U.S.C. §§ 621 et seq.**

46. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

47. Plaintiff can prove discriminatory treatment under the ADEA by the same standard that is used to evaluate discrimination under Title VII, which requires Plaintiff to show (1) she is a member of the protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; (4) under circumstances giving rise to an inference of discrimination. Cutler v. Secretary of U.S. Affairs, 507 Fed Appex. 246, 249 (3d Cir. December 20, 2012) citing Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 316 (2d Cir. September 21, 1999).

48. It is undeniable that Plaintiff falls within the protected class under the ADEA at the age of seventy (70) years old at the time of her termination. Plaintiff was qualified for the position, as she had served as an administrative assistant for over twenty years. Plaintiff suffered an adverse employment action under circumstances giving rise to an inference of discrimination when she was summarily fired without recourse or justification, less than a month after turning seventy years-old.

49. Defendant cannot show a legitimate nondiscriminatory reason for its actions because it is clear from its own words and actions that the termination of Plaintiff and another employee, Mr. Gurkas—two of Defendant's most senior support staff—was in fact an effort to remove elderly staff members rather than the younger remaining paralegals/secretaries. Any reasons proffered by Defendant for terminating Plaintiff's employment are pretextual and can readily be disbelieved.

50. Defendants engaged in an unlawful discriminatory practice by discriminating and retaliating against Plaintiff because of her age.

51. As a result of Defendants' violation of the ADEA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunity; harm to her business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

## COUNT III
## DISABILITY DISCRIMINATION
## NEW JERSEY LAW AGAINST DISCRIMINATION ("NJLAD"), N.J.S.A. 10:5-1 et seq.

52. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

53. Pursuant to the NJLAD, Defendant had a duty to maintain a work environment free of disability discrimination.

54. Under the NJLAD, Plaintiff must establish a *prima facie* case for disability discrimination, namely that she (1) has a disability, (2) is a qualified individual, and (3) has suffered and adverse employment action (4) under circumstances giving rise to an inference of discrimination.

55. Furthermore, it is well-settled law that, under the NJLAD, employers have an obligation to provide a reasonable accommodation for a disabled employee and that the failure to provide a reasonable accommodation to an employee's known disability is a form of discrimination.

56. It is undisputed that (1) Plaintiff's cancer diagnosis qualifies as a disability; (2) Plaintiff's nearly two decades of performance establish she was qualified; and (3) Plaintiff was terminated (4) a mere two weeks after requesting a reasonable accommodation related to her cancer diagnosis, and no more than four days following her return from a four-month disability leave for an unrelated wrist injury.

57. Defendant cannot show a legitimate nondiscriminatory reason for its actions, and any reasons proffered by Defendant for terminating Plaintiff's employment are pretextual and can readily be disbelieved.

58. Defendants engaged in an unlawful discriminatory practice by discriminating and retaliating against Plaintiff because of her disability and refusing the provide Plaintiff with a reasonable accommodation.

59. As a direct and proximate result of Defendants' wrongful termination of Plaintiff, Plaintiff was deprived of her right to equal employment opportunities on the basis of her race/color/national origin/ancestry/nationality.

60. As a result of Defendants' violation of the NJLAD, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunity; harm to her business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

### COUNT IV
### AGE DISCRIMINATION
### NEW JERSEY LAW AGAINST DISCRIMINATION ("NJLAD"), N.J.S.A. 10:5-1 et seq.

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. Pursuant to the NJLAD, Defendant had a duty to maintain a work environment free of age discrimination.

63. Under the NJLAD, Plaintiff must establish a *prima facie* case for age discrimination, namely that she (1) is a member of a protected class based on age, (2) is a qualified individual, and (3) has suffered and adverse employment action (4) under circumstances giving rise to an inference of discrimination.

64. It is undeniable that (1) Plaintiff falls within the protected class under the NJLAD at the age of seventy (70) years old at the time of her termination; (2) Plaintiff was qualified for the position, as she had served as an administrative assistant for over twenty years (3) Plaintiff suffered an adverse employment action when she was terminated (4) under

11

circumstances giving rise to an inference of discrimination when she was summarily fired without recourse or justification, less than a month after turning seventy years-old.

65. Defendant cannot show a legitimate nondiscriminatory reason for its actions because it is clear from its own words and actions that the termination of Plaintiff and another employee, Mr. Gurkas—two of Defendant's most senior support staff—was in fact an effort to remove elderly staff members rather than the younger remaining paralegals/secretaries. Any reasons proffered by Defendant for terminating Plaintiff's employment are pretextual and can readily be disbelieved.

66. Defendants engaged in an unlawful discriminatory practice by discriminating and retaliating against Plaintiff because of her age.

67. As a result of Defendants' violation of the NJLAD, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunity; harm to her business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

                                        **DEREK SMITH LAW GROUP, PLLC**

                                        */s/ Ian M. Bryson, Esquire*
                                        IAN M. BRYSON, ESQUIRE
                                        1835 Market Street, Suite 2950
                                        Philadelphia, PA 19103
                                        (215) 391-4790
                                        ian@dereksmithlaw.com
                                        *Attorneys for Plaintiff*

Dated: May 6, 2019